Cite as 2026 Ark. App. 163

# ARKANSAS COURT OF APPEALS
## DIVISION IV
No. CR-25-309

| | |
|---|---|
| CHASE BROWNING-LANGSTAFF <br> APPELLANT <br><br> V. <br><br> STATE OF ARKANSAS <br> APPELLEE | Opinion Delivered March 4, 2026 <br><br> APPEAL FROM THE CLARK COUNTY CIRCUIT COURT [NO. 10CR-23-54 ] <br><br> HONORABLE BLAKE BATSON, JUDGE <br><br> AFFIRMED |

**WAYMOND M. BROWN, Judge**

Appellant Chase Browning-Langstaff was charged by criminal information with two counts of second-degree murder in the December 30, 2022, deaths of Ayden Hendricks and Quartez Burton. A Clark County jury found appellant guilty of Hendricks's murder but acquitted appellant of Burton's murder. Appellant was sentenced to six years' imprisonment by a sentencing order entered on November 12, 2024. He argues on appeal that the circuit court erred by denying his motion for directed verdict because the evidence was insufficient to prove that he did not act in self-defense. We affirm.

Camryn Young made a 911 call to the Arkadelphia Police Department (APD) on December 30, 2022, around 10:17 p.m., stating that he had just been robbed at gunpoint by two masked individuals at his residence in the Lark Place Apartments in Arkadelphia. Young

stated that he heard about five gunshots after the suspects left his apartment and that he saw someone lying on the ground. APD received another call around 10:18 p.m. from Baptist Medical Center-Arkadelphia reporting that a gunshot victim had just been dropped off at the emergency room. When officers arrived at Lark Place Apartments, they found the victim, sixteen-year-old Hendricks, lying face down in the parking lot on the west side of the building. He had been shot twice in the back and was deceased. Officers were able to talk to Young, who stated that two individuals carrying firearms kicked in the door of his bedroom[1] and robbed him of his personal belongings.[2] He stated that his girlfriend, Baylee Ledbetter, was also present during the robbery. Young indicated that he subsequently heard gunshots, and when he went outside, he saw his neighbors—appellant and appellant's brother, Chandler Browning—holding firearms.

Chandler ended up calling Kameron Reese, their cousin, to take them to their mother's house. Appellant was carrying an AR-style rifle when he got into Reese's vehicle. Appellant told Reese that he had been involved in a gunfight and that he killed someone. Appellant also told Reese to keep his mouth shut. After dropping appellant and Chandler off, Reese attempted to flee from police. As he was fleeing, he threw appellant's rifle and his own pistol out of the window. The firearms were both subsequently recovered. Appellant

[1]Young's front door was unlocked, but the bedroom door was locked.

[2]It was later discovered that the personal belongings were money and drugs.

2

threw the Glock 9mm firearm used in the shooting into the Ouachita River near the boat ramp the next day.

The homicide investigation at Lark Place Apartments turned up a cell phone and a Nike shoe lying on the ground on the first floor. Money, projectile pieces, and shell casings[3] were found on the second story of the apartment building. Other shell casings were found underneath the staircase going down to the first floor in the breezeway. A black gun laser was also found on the ground on the first floor. Blood was found on a pole at the bottom of the stairway, and more blood was found on the steps.[4] Burton was identified as the victim who showed up at the ER. He was suffering from gunshot wounds to his back and his right arm. The gunshot to Burton's right arm was fired at close range, with evidence indicating that the muzzle was against Burton's skin when the shot was fired.

Appellant's jury trial took place on November 6–8, 2024. The above facts were introduced during the trial. Appellant's girlfriend, Jazmine Daniels, stated that she told police that appellant shot the victims in self-defense after one of them held a gun to appellant's head when leaving Young's apartment. However, while testifying, she denied that appellant ever discussed the incident with her. On cross-examination, Daniels stated that appellant told her he was in fear for his life, and he closed his eyes and shot his gun.

---

[3]Two 9mm shell casings were found in front of Young's apartment, and one 9mm shell casing was found down the hall in front of appellant's apartment. There was also a 9mm shell casing found under the stairs and one found on the ground next to a car.

[4]The blood on the stairway was determined to be Hendricks's.

After the State rested, appellant unsuccessfully moved for directed verdict, arguing that the State had failed to prove a prima facia case of second-degree murder. Appellant argued that the State had failed to prove that appellant acted knowingly and that there was no evidence that he was aware that his conduct would cause the victims' deaths. He also argued that there was no evidence that the deaths were caused by a weapon owned by him, and there was no evidence that the victims were killed under circumstances manifesting extreme indifference to the value of human life.

Chandler testified that he was inside their apartment when the shooting took place and that he did not shoot anyone. He also denied hearing anything going on at Young's apartment.

Appellant testified that on the night in question, he was home folding clothes when he heard an "unusual truck" outside. He said that he knew something was wrong when he realized that the owner of the truck was affiliated with the Bloods gang. He stated that he continued what he was doing but that he kept hearing noises like someone was running on the steps. He said that he subsequently heard a noise at his door, like someone was trying to "jiggle" his doorknob. He looked out of the peephole but did not see anyone. He then decided to grab his gun and go outside. He stated that he approached Young's apartment and noticed that Young's door was wide open. He said that he heard loud voices demanding something as he approached Young's apartment, which caused him to head back toward his apartment. He stated that as he was going back to his apartment, he "felt footsteps" approaching him. Appellant testified that he put his back to the wall and was able to see a

masked individual come out of Young's apartment. He said that the person did not see him. However, he stated that the second person who came out recognized him and called out to him, causing the first person to head back up the steps. Appellant stated that the second person pointed a gun to his head and that he just closed his eyes and started shooting. He said that he went back into his apartment once he opened his eyes and realized that the individuals were gone. He stated that he told Chandler he wanted to leave and that Reese subsequently came and picked them up. Appellant denied that he told Chandler or Reese what had happened. He said that he had an AR-style rifle and a Glock with him when he got into Reese's car and that he left the rifle with Reese. He stated that he went and stayed with Daniels and told her "bits and pieces" about what had happened. He said that he regretted what happened and wished that he could go back and change it. He admitted that he initially told officers he was picked up by his mother earlier that night and was not at the apartments when the shooting took place. Appellant said that he recognized Burton by his voice that night. He testified that he shot the victims with his Glock and that he subsequently threw the Glock into the Ouachita River near the boat ramp.

Appellant unsuccessfully renewed his directed-verdict motion at the end of his case and again at the end of all the evidence. The motions excluded the argument about the weapon. The jury found appellant guilty of murdering Hendricks, but it acquitted appellant of Burton's murder.[5] Appellant was sentenced to six years' imprisonment. The sentencing

---

[5]The jury was instructed on justification.

order was filed on November 12, 2024, and appellant filed a timely notice of appeal on December 11.

On appellate review, we must determine whether there was substantial evidence to support a finding of justification; justification is an element of the offense, and once raised, it must be disproved by the prosecution beyond a reasonable doubt.[6] A person is justified in using deadly physical force upon another person if the person reasonably believes that the other person is committing or about to commit a felony involving force or violence or is using or is about to use unlawful deadly physical force.[7] A person may not use deadly physical force in self-defense if the person knows that he or she can avoid the necessity of using deadly physical force by retreating, but he or she is not required to retreat if unable to retreat with complete safety.[8]

Appellant's justification argument is not preserved for our review because his directed-verdict motion failed to identify any specific element of justification that the State failed to disprove.[9] A motion for directed verdict shall state the specific grounds therefor.[10] In his initial and subsequent directed-verdict motions regarding the second-degree-murder

---

[6]*Rouse v. State*, 2023 Ark. App. 558.

[7]Ark. Code Ann. § 5-2-607(a) (Repl. 2024).

[8]Ark. Code Ann. § 5-2-607(b)(1).

[9]*See Vermillion v. State*, 2024 Ark. App. 392, 690 S.W.3d 899.

[10]Ark. R. Crim. P. 33.1.

6

charges, appellant's counsel argued that the State had not met its burden of proving that appellant acted knowingly or that he knew his conduct would cause the victims' deaths. He also argued that there was no evidence that appellant acted under circumstances manifesting extreme indifference to the value of human life. Appellant's argument failed to identify any specific deficiencies in the State's proof regarding justification; thus, the issue is not preserved for appeal.[11]

Affirmed.

ABRAMSON and THYER, JJ., agree.

*Law Offices of John Wesley Hall*, by: *Samantha J. Carpenter*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Jacob Jones*, Ass't Att'y Gen., for appellee.

---

[11]*Vermillion, supra.*